GOLDSMITH *v.* TOWER HILL STEAM-SHIP CO.[1]

*(District Court, S. D. New York.    February 20, 1889.)*

CARRIERS OF LIVE-STOCK—DELAY IN SAILING—EXPENSE OF KEEPING STOCK—
    LOSS OF WEIGHT—LIABILITY OF CARRIER.
        Where a steam-ship's sailing day was delayed, and in consequence libelant brought suit to recover alleged loss for the keep of his live-stock while awaiting shipment under a prior contract, as well as for their loss of weight during such delay, but it appeared that part of the original lot was sent forward by another steamer, and that the rest were sold in this city without any loss proved, and that the steamer's delay was without fault, and that the libelant had early notice of the expected delay, *held,* that libelant had sustained no damage on the original lot.    But the evidence indicating that on a second lot, procured on notice from the ship, there was further delay, *held,* that libelant was entitled to recover for the keep and loss of weight on the last lot.

In Admiralty.    Libel for damages for delay in transporting cattle.

The respondents on the 22d of September, 1888, agreed to transport upon the next voyage of their steamer Tower Hill, from New York to London, 275 head of cattle and 500 head of sheep; the cattle to be shipped on notice of the time of sailing, to-wit, about September 29th.    On the arrival of the steamer she was found to have sustained some damage, which would cause detention, at first supposed to be slight; and notice was given to the libelant that she would sail on October 3d.    It was afterwards found that the damages were much greater than supposed; and the steamer did not sail until the 15th, when she carried the agreed number of cattle and sheep.    The libel is to recover damages for the ex-

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

penses of keeping the live stock, and the loss of weight in the mean time.

*Butler, Stillman & Hubbard,* for libelant.

*Wing, Shoudy & Putnam,* for respondents.

BROWN, J. The evidence shows that none of the cattle or sheep that were first designed to be sent by the Tower Hill were kept until she sailed. The libelant was in the business of purchasing cattle in the west, to be shipped to this port, and thence forwarded by steamer. Of those originally designed for the Tower Hill, 117 were forwarded by the steamer Helvetia, which sailed on October 7th, belonging to another line; the rest were sold to butchers in this city. All the sheep first brought were likewise sold. At the end of the trial two adjournments were had to allow the libelant to furnish legal evidence of the kinds of damage sustained. No further evidence was introduced; and, upon the cause thus submitted, there is no sufficient proof of any loss to the libelant on the cattle or the sheep sold. The libelant failed to appear for examination; and the evidence of his clerk and book-keeper is quite indefinite as to the small loss which he thinks arose on the sale of the sheep. No claim for that item was made on the respondents before suit.

As respects the 117 cattle for which damages are claimed for their keep and loss in weight from October 3d until the Helvetia sailed, on October 7th, there is no certain evidence that they arrived by October 3d, or any sooner than was necessary to ship them on the Helvetia. Again, from the failure to prove any loss on the remainder of the consignment that was sold, it must be inferred that the 117 could also have been sold without loss, had the libelant chosen to sell them. If so, he could not keep them here for the purpose of sending them on the Helvetia, and then charge the respondents for keeping them in the mean time. The inability of the respondents to have their vessel sail upon the day assigned, and the subsequent several delays, were all accidental, and without any fault on their part. The libelant had notice of the expected delays. In such a case, the other contracting party is held to reasonable care and exertion to render the injury as light as possible. *Hamilton* v. *McPherson,* 28 N. Y. 72, 77. If, therefore, the 117 cattle were kept over for the Helvetia, there is no evidence to show that the respondents are chargeable for this item. It was the libelant's voluntary act.

There is no evidence of any damages sustained in holding back the cattle or sheep first designed for the Tower Hill.

The respondents are liable for the keep and loss of weight on the second lot of cattle and sheep, upon the last postponement from October 14th to October 15th. The cost of "keeping" here is for cattle, 50 cents per head a day; and for sheep, 10 cents. This item is $187.50; for loss of weight, $266.87; making in all, $454.37, for which a decree may be entered, with interest since October 15, 1888, with costs.