WERNICK, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, April 14, 1908.

1. COMMON CARRIERS: Delay in Shipment: Pleading: Election of Actions. Generally, damages for delay in shipment of freight may be recovered either in an action *ex contractu* or *ex delicto* at the option of the pleader, but the pleader must recover on the theory adopted in his pleading.

2. ———: ———: ———: Tort. A complaint by a shipper against a carrier alleging that the plaintiff delivered mules to the defendant for shipment for a reward and paid the freight charges, that the defendant neglected and refused to ship the mules on the date they were delivered, whereby the plaintiff was dam-

aged, without alleging any promise or agreement to ship at any particular date, or that the plaintiff was damaged by a violation of any agreement, stated an action sounding in tort.

3. ———: ———: ———: Contract and Tort: Election of Actions. Where a duty imposed by law is violated contrary to the terms of a contract, the party to the contract injured thereby may elect to sue on the contract or sue in tort, but where one violates a duty imposed by contract and not by law independent of a contract, the party injured must sue on the contract. If the failure of a carrier to ship freight is such that it violates its duty imposed by law as a common carrier, the shipper injured may sue in tort, but if the delay in transportation by a carrier is not a violation of its duty as such, but a violation of a special contract, the party aggrieved must sue on the contract.

4. ———: ———: ———: ———: Action on Contract. Where freight was delivered by a shipper to a railroad company under an agreement by the latter to ship the freight on a certain train, a failure to ship on that train was a breach of a special contract and the shipper's remedy for such breach was an action on the contract; but if he could prove unreasonable delay in making the shipment amounting to a breach of defendant's duty as a carrier, he could recover in tort for damage caused by such delay.

5. ———: ———: ———: ———: Amendments. Where a shipper in an action against a railroad company alleged that he delivered freight to the defendant for carriage and the defendant neglected to ship it on the day it was delivered, to the damage of the plaintiff, an action sounding in tort, he could not amend his statement so as to declare on a breach of contract to ship by a given train.

Appeal from Scott Circuit Court.—*Hon. Henry C. Riley*, Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *Moses Whybark* for appellant.

The plaintiff has not declared on the contract of shipment, but has founded his action on the alleged negligence of the defendant in not shipping his mules on the first or "through" freight train; and he must recover, if at all, on such allegation of negligence. The

plaintiff is bound by the allegations in his petition. Link v. Vaugn, 17 Mo. 585; Bruce v. Simms, 34 Mo. 246; Bensick v. Cook, 110 Mo. 182; Weil v. Posten, 77 Mo. 287; Chitty v. Railroad, 148 Mo. 74, and cases cited; Breeding v. Mining Co., 103 Mo. App. 176. The plaintiff founds his action on the negligence of the defendant in failing to ship the stock promptly; but he has failed to show that the delay was the result of the defendant's negligence. Mere delay, without more, is not negligence. Ecton v. Railway, 125 Mo. App. 223; McCrary v. Railroad, 109 Mo. App. 569; Anderson v. Railway, 93 Mo. App. 677; Wright v. Railroad, 118 Mo. App. 392.

STATEMENT.—This case was begun before a justice of the peace on the following statement, omitting the title:

"Plaintiff states that defendant is a corporation, doing business as a common carrier, in and through said State, county and township; that on to-wit: August 14, 1905, at McMullen station on defendant's line of railroad, in said Scott county and Richland township, plaintiff delivered to defendant for shipment for reward, from said McMullen station to Portageville, Missouri, six mules; that plaintiff paid to defendant the freight charges on said mules, and in accordance with defendant's directions loaded the same in a car; but that defendant neglected and refused to ship said mules on said date; that plaintiff in consequence of defendant's so neglecting and refusing to ship said mules on said date, was compelled to unload said mules from said car and convey them to his home, and keep them until the next day; and plaintiff further states that in consequence of defendant's so neglecting and refusing to ship said mules, as aforesaid, said mules were, on account of being confined in said car for a space of about nine hours on defendant's side track at said station of McMullen, greatly injured and depreciated in

value; that in consequence of defendant's neglect and refusal to ship said mules, as aforesaid, plaintiff has been damaged in the sum of two hundred and fifty dollars. Wherefore he prays judgment of defendant for the sum of two hundred and fifty dollars, and costs of suit."

An appeal was prosecuted from the judgment of the justice to the circuit court where the case was tried anew, resulting in verdict and judgment against defendant, and an appeal to this court. Plaintiff made a contract with defendant's agent at McMullen station for the transportation on August 14, 1905, of six mules and two wagons from McMullen to Portageville, another station forty miles away. Plaintiff testified it was agreed the property should be forwarded by the through freight train which was due about ten o'clock in the forenoon. This train stopped at McMullen only when flagged, and the evidence for defendant tends to show, did not take freight there to be carried to any intermediate station between McMullen and a division point, unless the conductor of the train was ordered to do so by his superior officer at Cape Girardeau. Such an order was procured by telephoning the station agent at Sikeston, who in turn would communicate with the superintendent at Cape Girardeau, and if the latter consented for the train to receive the freight, the conductor would be telegraphed so the message would reach him at some station beyond McMullen. The agent at McMullen said he told plaintiff the latter would have to obtain permission in the manner stated for the mules to be hauled by the through freight train; and at this point occurs the only discrepancy in the evidence. Plaintiff swore the agent told him to bring his mules in and load them on a car before train time and the agent would flag the train and have the car taken up by it, saying the conductor would take it on the agent's request, though usually the train did not accept local freight. With this understanding

plaintiff had his mules and wagons in a car ready for shipment an hour or so before the train arrived. The agent flagged it, but the conductor refused to take the car, saying he had no order to do so, and "the local" would be along in a few minutes and take it. A train which hauled local freight was due at McMullen about the same hour, but on the particular day did not arrive until very late in the evening. In consequence of these incidents plaintiff's mules remained in the car on a side track all day and were injured.

The court gave this instruction for plaintiff:

"If the jury believes from the evidence that plaintiff's mules were injured by or in consequence of the negligence or carelessness of the defendant company to ship them according to contract, and that plaintiff was in consequence of such negligence or carelessness put to any extra expense or trouble in removing said mules from the car and reloading them again, then they should find for the plaintiff and assess his damages at such sum as they find has been proven, not to exceed two hundred and fifty dollars."

At the conclusion of the trial defendant's counsel asked the court to order a verdict for defendant, but the request was refused.

GOODE, J. (after stating the facts.) —The instruction given on plaintiff's request advised the jury that if the "mules were injured by or in consequence of the negligence or carelessness of the defendant company to ship them according to contract" the verdict should be for plaintiff. This instruction jumbled tort and contract as theories of the case, authorizing a verdict for plaintiff if there had been a tortious breach, so to speak, of the contract of shipment. The essence of this contract, so far as the case in hand is concerned was the promise of the agent at McMullen to send the mules by the through freight train due at ten o'clock in the morn-

ing. Violation of this engagement would entitle plaintiff to damages under a proper pleading. [Railroad v. Waters, 41 Ill. 73; Railroad v. Ritchie, 26 S. W. 840; Ayres v. Railroad, 71 Wis. 372.] It is insisted for defendant the case stated in the complaint is in tort for negligence, instead of assumpsit for a breach of the agreement, and, therefore, the court erred in permitting a verdict against defendant for not shipping the mules, as agreed, by the through train. The instruction required the jury to find the mules were injured in consequence of the negligence of defendant in not shipping them according to contract. There was no proof of the breach of any duty by defendant, except failure to send the goods by the first train—no proof of loss of any of the animals or damage to them by tortious conduct of defendant's servants after they were delivered to it, but whatever loss plaintiff suffered resulted from the delay in forwarding them. Several questions are for decision: whether the complaint is in contract or tort; if in tort, what proof supports it and what will not, and the propriety of the main instruction for the plaintiff. Generally damages for delay in shipment or loss of property while in a carrier's custody, may be recovered either in an action *ex contractu* or one *ex delicto,* at the option of the pleader. The latter is the more common proceeding, the action being in the nature of trespass on the case under the common law system of pleading. [Clark v. Railroad, 64 Mo. 446; Lupe v. Railroad, 3 Mo. App. 77; Heil v. Railroad, 16 Mo. App. 363; 3 Ency. Pl. & Pr., 818.] The form of the action is occasionally material under the code system: among other reasons because, though the pleader usually may elect for either contract or tort, he must recover on the theory adopted in his pleading. [Dry Goods Co. v. Warden, 151 Mo. 578.] We will have occasion to consider the limits within which the election may be exercised, and whether or not in exceptional instances the facts exclude the use of

one of the procedures and require the other. We must first determine where the present action falls. Law writers have remarked on the frequent difficulty of deciding in such cases, whether the declaration states a case *ex contractu* or *ex delicto;* and as might be expected, contrary judgments have been pronounced on similar pleadings. [3 Ency. Pl. & Pr. 821.] It is said in the opinion in Smith v. Seward, 3 Pa. St. 342, 345, that the law of this subject has been put on satisfactory ground by "making the presence or absence of an averment, not of promise only, but of consideration also, the criterion." This ruling and the one it relies on (Corbett v. Packington, 6 Barn. & Cres. 268) have been much invoked as authority. [3 Hutchinson, Carriers (M. & D. Ed.), sec. 1328, Orig. Ed., sec. 744.] If the injury declared on arose from the breach of an express or implied contract, it is said the pleader, if he would proceed in case instead of assumpsit, must refrain from laying a promise. [21 Ency. Pl. & Pr., 913.] And again; that averments either *ex contractu* or *ex delicto* are not decisive of the nature of the action. [Id., 657, 658.] The complaint before us says nothing of a contract. It alleges plaintiff delivered the mules to defendant for shipment for a reward and paid the freight charges, thereby stating a consideration; but contains no allegation of a promise by defendant with reference to transporting the animals. Moreover, after charging "neglect and refusal" of the defendant to ship the mules on the date they were delivered, not on a date promised, the complaint says plaintiff was damaged in consequence of the refusal in the sum stated. Among the badges of a declaration in assumpsit, are averments of the essential elements of the contract declared on and a breach of some contractual stipulation. [21 Am. & Eng. Ency. Law, 659, 660.] Because the complaint, though it asks damages for defendant's neglect to ship the mules on the date they were delivered, nowhere alleges a promise to ship them on said date, we

consider the case stated was in tort, and think we are supported in our opinion by the precedents in this State and some others, but concede there are precedents to the contrary. [Lupe v. Railroad, 3 Mo. App. 77; Heil v. Railroad, 16 Mo. App. 363; Glascock v. Railroad, 86 Mo. App. 114; Clark v. Railroad, 64 Mo. 440; Rideout v. Railroad, 81 Wis. 237; Bowers v. Railroad, 107 N. C. 725.] In the Lupe and Glascock cases the pleadings for the plaintiffs stated a consideration for the contracts of carriage, yet nevertheless the cases were held to be in tort, and the opinion in the Heil case indicates the same view was taken of the petition therein because it set out no contract of shipment.

We hold the action is in tort and not in assumpsit; but this ought not to be treated as requiring us to condemn, without further inquiry, the instruction authorizing a verdict against defendant for neglecting to forward the mules "according to contract." We must examine if it can be upheld on the ground that an action in tort, in the nature of trespass on the case, will lie for breach of the agreement to forward by the through freight train. Could plaintiff waive the assumpsit and sue in tort? Or the question may be stated in this way; was the duty imposed on defendant by its agreement to forward the mules by the first train one of those obligations of which the breach may be declared on in either assumpsit or tort? We have been unable to reconcile all the authorities touching this question. It has been said the action of trespass on the case was originally devised to afford a remedy for all personal wrongs to which covenant or trespass was inapplicable. [Stephen, Pleadings (Andrews Ed.), 25; 28 Ency. Law, 614.] Probably that statement is too broad, but no doubt the action was applied pursuant to the statute of Westminster 2d, to the redress of injuries, including violations of contractual obligations, not covered by any of the ancient common law actions. In aid of this purpose the

courts have occasionally allowed it to be used in actions for breach of an express stipulation. A notable instance of this kind is Boorman v. Brown, 3 Adolph. & Ellis, 511, 11 C. & Finn. (H. of L.) 1. A form of declaration in case for goods sold and delivered is given in Stephen on Pleadings (page 120). But we find in the decisions indications that since the remedy in assumpsit developed from trespass on the case, the courts have inclined to treat as ex contractu actions for breaches of agreements creating such obligations as otherwise the law would not impose; whereas actions founded on a breach of duty imposed by law, whether stipulated for in a contract or not, are deemed ex delicto. It cannot be said the cases uniformly deny the option to sue in contract or tort, even when the obligation violated could have no source outside of an agreement of the parties. [28 Am. & Eng. Ency. Law, 616.] In other words, trespass on the case is sometimes treated as a remedy concurrent with assumpsit for breach of an agreement. [28 Am. & Eng. Ency. Law, 626; Burnett v. Lynch, 5 B. & C. 589; Boorman v. Brown, supra.] But we think there is a growing tendency to distinguish the two remedies, and refuse the one in tort if the gist of the grievance is a breach of a duty existing only by force of a contract. The line of demarcation grows more vivid in the later opinions, and runs between violations of obligations imposed solely by contract and those imposed by law, without, or concurrently with, a contract. If the law of its own policy, fastens a duty on a person or class of persons, and this duty is violated, an action in tort may be maintained by the party aggrieved, even though he has taken a stipulation for the observance of the duty. But if the breach is of a duty arising solely from a contract, and only noticed by the law because it redresses breaches of contractual obligations, in our judgment the weight of modern authority is against the view that an action in tort for damages will lie. In such instances assumpsit is

the appropriate remedy and an ample one. In the one case the general issue at common law is *non assumpsit;* in the other, not guilty; and regard to these forms of answer will assist in ascertaining what, on the facts, is the proper remedy; as was illustrated by Chief Justice GIBSON in Zell v. Arnold, 2 Pa. (P. & W.) 292. In said case the declaration averred the defendant, who was a millwright, undertook, for a reasonable consideration, to build a mill and carding machine, and to grade a brook to plaintiff's dam; but had so carelessly and unskillfully laid out the watercourse and built the mill the water would not flow along the race, depriving plaintiff of the use of his mill; for which delinquency damage was prayed. The case was connected with a contract or engagement by defendant; but it will be observed the default was in respect of a duty imposed by law, even if it was not stipulated for; and in the particular case there was no stipulation. The defendant in holding himself out as a millwright and engaging to do work at said trade, was bound to possess and use reasonable skill. The court said:

"These (viz: the remedies in assumpsit and case) are sometimes concurrent remedies; as in an action against a carrier who may be made to respond either immediately on the contract which affords a specific ground of action, or on the custom which raises a duty to carry the goods safely; and as the one or the other form is adopted, so may the count be joined with other counts sounding in contract or tort. [Law of Carriers, 117.] In all cases where the action is not on the contract, but for the breach of a collateral duty, the gist is a personal tort; as where a smith pricks a horse in shoeing, or a farrier kills him by bad medicines of neglect."

Equally definite is the opinion in Nevin v. Pullman Car Co., 106 Ill. 222, 235. Referring to Boorman v. Brown, supra, and cases of the same tenor, the court

quoted the following passages from opinions given in the Exchequer Chamber and House of Lords:

"The principle in all these cases would seem to be that the contract creates a duty, and the neglect to perform that duty, or the nonfeasance, is a ground of action upon a tort."

"I think the judgment of the Court of Exchequer Chamber is right, for you can not confine the right of recovery merely to those cases where there is an employment without any special contract. But wherever there is a contract, and something to be done in the course of the employment which is the subject of that contract, if there is a breach of the duty in the course of that employment, the plaintiff may recover, either in tort or in contract."

The opinion of the Supreme Court of Illinois points out that, under the weight of authority, the doctrine of the excerpts from Boorman v. Brown is only partly correct; that it is no objection to the action in tort that the duty violated was stipulated for if it was imposed by law without a stipulation; but that trespass on the case will not lie for violation of a duty dependent solely on contract. The opinion then says:

"It is often, and indeed generally stated, the action lies only for the breach of a common law duty, and this we believe to be strictly true; yet there is some confusion in the cases as to what is meant by a common law duty, growing out of the fact that it sometimes arises without the intervention of a contract, and sometimes with it; and in the latter case it is often said, as in the case last cited, 'the contract creates the duty;' and while this is true and accurate enough in a certain sense, yet when we attempt to define with precision just when the action will lie and when it will not, the statement is not sufficiently definite; for it must be conceded the law makes it the duty of every one to perform his contract, and it is clear case will not lie for the breach of every

duty created by contract. If one contract to deliver to another a load of wood, or pay a specific sum of money on a given day and fails to do so, an action on the contract alone will lie; and yet it is manifest in the case supposed, there has been a breach of duty created by the contract. .. . . .

"The general principle seems to be this: Where the duty for whose breach the action is brought would not be implied by law by reason of the relations of the parties, whether such relations arose out of a contract or not, and its existence depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract, and not in tort—when otherwise, case is an appropriate remedy. Of course assumpsit is a concurrent remedy with case, in all cases where there is an express or implied contract."

Chitty treats the question in hand to the same effect in several passages. [1 Chitty, Pl. & Pr. pp. 152, 153.] We quote from a modern author:

"In certain relations which are usually entered into by contract, the law imposes a duty that arises from the relation rather than the contract, and if the duty be disregarded, the one who suffers may sue upon the agreement, or may treat the wrong as a tort, and bring an action analogous to that of trespass on the case. This duty arises on the part of carriers, innkeepers, attorneys, physicians, farriers, and other skilled mechanics, etc. . . . .

"If there be no legal duty except as arising from the contract, there can be no election—the party must rely upon the agreement. Thus if one agree to take the charge and superintendence of a farm for a year, and to take charge and care of the stock, etc., there is no legal duty outside the contract; and an action, as on the case for tort, will not lie for his negligence. If one agrees to board a horse for another and keep him in a separate stall, and negligently put him in a stall with other

horses and he is kicked and injured in consequence, *the negligence cannot be charged as a tort, for there is no duty outside the contract."* [Bliss, Code Pleading, sec. 14.]

The remark italicized expressed exactly what was done in the instruction under review—a breach of the agreement to ship by the through train was treated as negligence.

Attending to the special application of the foregoing principles in actions against common carriers for delays in shipment and losses of goods, we find the books replete in statements that the party seeking redress may proceed either in contract or tort. [Clark v. Railroad, 64 Mo. supra; 3 Ency. Pl. & Pr. 818; 3 Hutchinson, sec. 1324 of M. & D. Ed. (740 orig. ed.)] But in this class of actions, as in others, we apprehend the right to proceed in tort exists only when the carrier's default is in respect of a duty which the law imposes even though nothing is said about it in the contract of shipment. "Where the gravamen of the declaration is solely for a breach of duty and founded on the custom (i. e., the law relating to the duties of a carrier) the action is in tort; but if the cause of action as stated, is for a breach of the agreement, the action is on contract." [See 3 Ency. Pl. & Pr. 821, and cases cited.] Also:

"It may be stated as an abstract proposition that where the duty of a common carrier to a passenger is not one which is implied by law by reason of the relation of the parties, but depends solely upon the fact that it has been expressly stipulated for, the remedy is in contract and not in tort; but where the duty is implied by law by reason of the relation of the parties, or where the passenger sustains an injury by reason of the breach of a duty which the railroad owes to the public in general, the remedy is in tort." [15 Am. & Eng. Ency. Law, p. 1121.]

"Unless the contract imposed on the carrier some duty or obligation in respect of goods *which the law itself would not impose* (all italics ours) and which would be to some advantage to the plaintiff in an action, there can be no reason why it should not be based upon the contract rather than upon the duty." [3 Hutchinson, Carriers (M. & D. Ed.), sec. 1331.] ˚

"As a general rule where there is a breach both of contract *and of a duty imposed by law*, as in case of loss or injury by a common carrier, the plaintiff may elect to sue either in contract or tort." [4 Elliott, Railroads, sec. 1693.]

And see the second passage we have quoted from Chitty's Pleadings (p. 153), also 28 Am. & Eng. Ency. Law, 625, 632. The following cases against carriers support the above excerpts from text-writers: Kimball v. Railroad, 26 Vt. 247; Arnold v. Railroad, 83 Ill. 273, 280; Nevin v. Car Co., 106 Ill. 222; Boaz v. Railroad, 87 Ga. 463; Nichol v. Railroad, 89 Ga. 260; Clark v. Railroad, and Heil v. Railroad, supra. In Emigh v. Railroad, 4 Biss. 114, the court said:

"As I understand it, the subjects proper for action on the case are of two distinct classes. First, where there is a tort committed, without force, on the person, character, or property of the plaintiff, entirely unconnected with any contract. Secondly, when there is a contract, either express or implied, *from which a common law duty results*, an action on the case lies for a breach of that duty; in which case the contract is laid as mere inducement, and the tort arising from the breach of duty as the gravamen of the action."

Applying the foregoing doctrine to the facts of the present case, we find the agreement breached (i. e., to ship plaintiff's mules in the morning by the through freight) did not create a duty which the law would imply independently of the agreement. The obligation implied by law was not that the company would ship by

said train, but would ship without unreasonable delay. Hence we hold that for plaintiff to recover for defendant's refusal to forward according to the agreement, he must sue in contract. We hold, too, that the remedy in tort could not be made available by merely charging the breach of the agreement in a tortious form, i. e., that defendant neglected to ship the mules according to contract. Neither can the statement be amended in the circuit court to change the case from one in tort to one in contract, as the amendment would substitute a new cause of action for the one tried before the justice. [Hansberger v. Railroad, 43 Mo. 76.] We are mindful that the rules of pleading are relaxed in favor of complaints before magistrates; but the present complaint does not refer to a contract, and to amend it so as to set one forth and declare for a breach of it, is not permissible.

If we are correct in the foregoing views, plaintiff can recover on his statement, only by proving defendant negligently delayed forwarding his mules for an unreasonable time after they were delivered to it. [Douglass v. Railroad, 53 Mo. App. 473; Goldsmith v. Steamship Co., 37 Fed. 806.] As the agent had directed plaintiff to bring his mules to the station for shipment, it was the legal duty of defendant to ship them in a reasonable time after arrival, even if the alleged promise to do so by the through train was not made. What was a reasonable time should have been left to the jury, if plaintiff's recovery must hang on the duty imposed by law in the absence of an agreement as to the time of shipment. It is not for a court to pronounce that in order to avoid unreasonable delay, the defendant was bound to ship the animals by the first train, or even on the day they were delivered. If no agreement controlled the matter, defendant was not bound to ship by a train which did not accept freight except under a special order at the station. [4 Elliott, Railroads, sec. 1555; Railroad v.

Clark, 2 Ind. App. 146.] Whether or not defendant fell short of its legal duty as a common carrier, in not moving the mules the day they were delivered, depends on the cause of the delay, which may have happened without the fault of the defendant. Delays of a carrier have a different status in law from a failure to carry safely, which is excused only when due to inevitable accident or the public enemy. [2 Hutchinson, Carriers (M. & D. Ed.), sec. 653.] Delay alone does not establish negligence. [Ecton v. Railroad, 125 Mo. App. 223, 101 S. W. 1140.] And as negligence is the gist of the case plaintiff must establish it in order to recover. [McCrary v. Railroad, 109 Mo. App. 569, 83 S. W. 82; Witting v. Railroad, 101 Mo. 631, 14 S. W. 743.] Instructing that neglecting to ship the mules "according to contract" rendered defendant liable, cannot be regarded as a proper submission of the facts on the issue of a tortious breach of duty. The jury should be left to say whether defendant's duty as a carrier to forward with reasonable despatch was performed, without referring them to a promise to forward on a certain date, which imposed an additional contractual duty. As regards defendant's observance of its legal duty, the essential inquiry is, was there an unreasonable delay? not, was there a delay beyond the date the parties agreed on for shipment?

The judgment is reversed and the cause remanded. All concur.